F. M. BRICKEY, Plaintiff in Error, *vs.* JOHN LINNERTZ, Defendant in Error.

*Opinion filed June 16, 1909—Rehearing denied October 13, 1909.*

1. EQUITY—*where equities are equal the law must prevail.* A court of equity will not enjoin the prosecution of an ejectment suit where the only question is whether the complainant or the defendant, having equal equities, shall be given the benefit of whatever title may have been acquired under the Statute of Limitations.

2. RESCISSION—*the remedy by rescission should be resorted to in apt time.* Where, by mistake, the grantor conveys land which he did not intend to convey and which the grantee did not bargain for, and the grantor does not, in fact, own the land the parties supposed was being conveyed, the only remedy available is rescission; but that remedy, to be effectual, should be resorted to in apt time between the parties to the conveyance.

WRIT OF ERROR to the Circuit Court of Monroe county; the Hon. B. R. BURROUGHS, Judge, presiding.

The litigation involved in this case was commenced in 1896 by defendant in error, Linnertz, bringing an eject- ment suit against plaintiff in error, Brickey, for the recov- ery of a tract of land known as a part of survey 342 of the commons field of Fort Chartres. Said commons field appears to have been situated partly in Monroe and partly in Randolph counties, and was originally surveyed into nar- row strips from the south-west to the north-east. Part of these surveys, designated by Nos. 341 to 345, inclusive, were in the neighborhood of three miles long and varied in width, the narrowest one (No. 345) being 4.33 chains

and the widest (No. 344) being 8.75 chains. Survey 341 is the south-east survey of those mentioned and survey 345 the north-west survey. Survey 662 lay adjoining and immediately south-east of survey 341. The land involved in the ejectment suit was, as we have said, the north-east end of survey 342, and contained between forty and forty-five acres.

In 1854 Franklin W. Brickey, father of plaintiff in error, owned the whole of surveys 341 and 342, and at that time he owned no other land in the neighborhood of these surveys. In that year he conveyed the south-west ends of said surveys, containing one hundred and forty-eight acres, more or less, to Eugene Louvier, and in 1855 he conveyed the north-east ends of said surveys, containing one hundred acres, to John Drury. Subsequently F. W. Brickey acquired tax deeds to the whole of survey 343, which adjoins survey 342 on the north-west. After the death of F. W. Brickey, which occurred several years ago, plaintiff in error, a son, acquired title from his co-heir to the whole of survey 343. In 1879 Drury sold his portion of surveys 341 and 342 to J. J. Linnertz, father of defendant in error. J. J. Linnertz subsequently died, and defendant in error bought the interest of his co-heirs and became the owner of the whole of that portion of surveys 341 and 342 conveyed by Brickey to Drury. At the time the conveyance was made from Brickey to Louvier, county surveyor Noel ran the lines of the portions of surveys 341 and 342 conveyed to Louvier. The portions of said surveys conveyed to Drury adjoined Louvier's north-east line and contained the remainder of said surveys. When Drury conveyed to Linnertz, deputy county surveyor Gardner ran the lines of the portions of the surveys so conveyed, and in making the survey treated the lines as running straight from one end of the surveys to the other, without any deviation or jog. About the year 1888 surveyor Gardner claimed to have discovered that the lines of said surveys did not run straight

through from one end to the other but jogged north-west at the point where the land conveyed by Brickey to Louvier joined that conveyed to Drury, which, as we understand it, is the line between Monroe and Randolph counties. The lines of surveys 662, 341, 342 and 343, as they were supposed to exist when the conveyances were made to Louvier and Drury and as then run by the surveyors, are shown by the following plat, designated as plat No. 1:

The location of a stone planted by Louvier at the northeast corner of his land is shown; also the location of two houses on the land supposed to have been bought by Drury, both of which are on survey 341 if the lines are extended straight through. The wavy line immediately north-west of the north-east end of survey 342 is intended to show the location of a ditch made by Brickey after he acquired the

title to. survey 343. The following plat, Nó. 2, shows the
lines of the same lands according to the new survey:

It will be seen from plat No. 2 that according to the new
survey the possession of Drury included no part of survey
342, which Brickey owned and which was described in the
deed to Drury and the deed from Drury to Linnertz, but
does include a part of survey 662, which Brickey did not
own and which was not described in either of said deeds.
Taking the new survey, plaintiff, in error, under his claim of
title to survey 343, had possession of the north-east end of
survey 342, and it is the said north-east end of survey 342,
as shown by the new survey, which the defendant in error
claims title to by *mesne* conveyance from Brickey, which
the ejectment suit was brought to recover.

At the first trial of the ejectment suit the court directed a verdict for defendant at the close of all the testimony and entered a judgment, finding the defendant not guilty. That judgment was reversed by this court and the cause remanded. (*Linnertz* v. *Dorway,* 175 Ill. 508.) Upon the second trial of the ejectment suit in the circuit court there was a judgment for plaintiff, Linnertz. Brickey paid the costs and took a new trial under the statute, but before trying the case again, filed this bill to enjoin the prosecution of the ejectment suit on the ground that he had equitable defenses that could not be availed of in an action of law.

The bill alleged that in 1855 Franklin W. Brickey, the father of the complainant, owned surveys 341 and 342, in the counties of Monroe and Randolph, State of Illinois, and that, as shown by the government field notes and plats, these surveys were slender bodies of land, extending from the base line, where they began, north-eastwardly, rectangular in form, with northerly and southerly sides parallel and straight, and were crossed by a line fifty arpents from the base line, running parallel with said base line and the easterly end of said survey; that survey 341, as shown by government field notes and plats, is five chains and eighty-three links wide, survey 342 is four chains and forty-one links wide, and survey 343, which is next adjoining 342 on its north-westerly side, is of the same shape and length as surveys 341 and 342 and is five chains and eighty-three links wide. The bill alleges that in January, 1855, Brickey sold to Louvier the south-westerly ends of surveys 341 and 342, which included all the land therein from the base line north-easterly to a line crossing said surveys at right angles, fifty arpents north-easterly from the base line; that prior to said conveyance Brickey and Louvier had the lines of said surveys run by a surveyor who was or had been county surveyor of Randolph county; that he ran the lines, as shown by the government notes and plats, straight from

the base line to the easternmost extremity of said surveys, and all parties then, and for long years thereafter, supposed the lines so run to be correct. The bill further alleges that in 1858 (but the proof shows the correct date was 1855) Brickey sold to John Drury the remaining portions or north-easterly ends of said surveys 341 and 342, being the same land previously surveyed as the north-easterly ends of surveys 341 and 342; that the ends bargained for by Drury and sold to him by Brickey, and which they both supposed were being conveyed, were embraced within the lines on the south-easterly side of survey 341 and the north-westerly side of survey 342, running straight and parallel with each other through to the north-easterly ends of said surveys; that Drury, under said conveyance, took possession of said ends as parts of surveys 341 and 342, according to the lines previously run by the surveyor, so that the lands conveyed to Louvier and those conveyed to Drury formed a continuous body of land rectangular in shape, without any break or jog in the side lines of either of said surveys from one end to the other. The bill alleges that Drury retained possession of the said land until 1879, when he bargained and sold the land he was so in possession of, to John J. Linnertz, father of defendant to the bill; that said Linnertz took possession of the same lands Drury had occupied and afterwards died intestate while so in possession; that the defendant, John Linnertz, purchased the interest of his co-heirs and has continued in possession thereof; that in the conveyance from Drury to John J. Linnertz, and the conveyance from John J. Linnertz's heirs to John Linnertz, the description of the land was substantially the same as that in the deed from Brickey to Drury. The bill alleges that in 1873 Franklin W. Brickey purchased at tax sale survey 343 and afterwards took possession of what he supposed to be said survey, cleared the same and remained in possession thereof until his death; that by his last will and testament Franklin W. Brickey de-

vised said survey 343 to complainant, F. M. Brickey, who has ever since his father's death been in possession of it. (The land he has so been in possession of as survey 343 is shown in plat No. 1 as adjoining and lying parallel with survey 342 in said plat throughout its entire length.) The bill further alleges that in 1895 John Linnertz had said lands surveyed by three surveyors; that the said surveyors claimed the side lines of said lands did not run straight from the base line at the south-west ends to the north-east ends, but that at a point fifty arpents north-east from the base line there was a jog to the north-west, as shown in plat No. 2; that according to said new survey the north-easterly end of survey 342 is no longer where it had always previously been supposed to be but is where survey 343 was always supposed to be. The bill alleges that in pursuance of said survey John Linnertz now claims the north-easterly end of what was always supposed to be survey 343, which is in possession of and is claimed by complainant; that the said Linnertz is in full possession of the land sold by Franklin W. Brickey to Drury, but claims the north-easterly end of what was always supposed to be survey 343 in addition thereto, on the ground that by the new survey it is a part of survey 342; that he had begun an action of ejectment against the complainant to recover possession thereof; that, regardless of all surveys, the land actually taken possession of by Drury and by Linnertz is the identical land bargained and sold to Drury and is the identical land on which the minds of said parties met, and that their minds never met on the lands now in controversy as part of survey 342; that Drury and Linnertz have been in continuous possession of the land they bargained for from the date of the conveyance by Brickey,—a period of nearly fifty years,—and that their possession during all that time has been undisturbed. The bill alleges that in equity and justice Linnertz should be confined to the land he is so in possession of, and should not be permitted to retain it and

in addition thereto recover the land in controversy. The prayer is that Linnertz be perpetually enjoined from prosecuting the ejectment suit and from otherwise disturbing the complainant's possession to the lands sued for in said ejectment suit, and that complainant's title thereto be quieted.

The answer denies that the lines of surveys 341, 342 and 343 are as shown in plat No. 1, and denies that Brickey bargained and sold to Drury the north-east ends of surveys 341 and 342 as shown in said plat, and avers that Brickey sold to Drury one hundred acres off the north-east ends of surveys 341 and 342. The answer denies that Drury, under the deed from Brickey, took possession of the land as shown in plat No. 1 or that the land he took possession of was a continuous body of land such as is shown by said plat, and avers that Drury did take possession of certain land called for in his deed from Brickey and retained possession thereof until he sold to Linnertz, in 1879; denies that the land so taken possession of by Drury under the conveyance included what is shown in plat No. 1 to be the north-east end of survey 341, and avers that Drury had before that time for many years been in possession of that portion of the land and that it was never owned by Brickey; that Drury, under said conveyance, took possession of the north-east end of what is shown by plat No. 1 to be survey 342 and of the tract immediately north-west thereof, which is shown by plat No. 1 to be a continuation of survey 343 but which is averred to be the north-eastern end of survey 342. The answer avers that Linnertz, under the conveyance from Drury to him, took possession of the land Drury had been in possession of under his deed from Brickey, but not all of the said land, because Brickey had, about 1879, forced the possession of Drury southwardly, by infringing upon the possession of Drury and Linnertz by the construction of a ditch which Brickey located and dug on or near the line between surveys 342 and 343 according to the old survey, but which according to the new

survey was on or near the line between 341 and 342. The
answer avers that the new survey is correct and respondent
does not know whether the land in controversy had previ-
ously been supposed to be a part of survey 343, and denies
that it is a part of said survey but avers it is a part of
survey 342, and denies that complainant is the owner of it.
The answer denies that respondent is in full possession of
the land sold by Brickey to Drury and by Drury to re-
spondent's father; denies that respondent claims anything
in addition to the land bargained and sold by Brickey to
Drury and by Drury to respondent's father, and avers that
respondent is entitled to the land which complainant alleges
was supposed to be a part of survey 343 because it is, in
fact, a part of survey 342, and respondent and his grantors
were dispossessed thereof by the construction of said ditch
by said Brickey.

H. CLAY HORNER, for plaintiff in error.

RICKERT & ZIEBOLD, for defendant in error.

Mr. CHIEF JUSTICE FARMER delivered the opinion of
the court:

Which of the surveys is correct is not involved in this
suit, as plaintiff in error concedes that the new survey in
this action is to be treated as correct. The proof shows
that the father of John Drury had built the house desig-
nated "old house" on the plats before any conveyance was
made by Brickey to his son, John Drury. There is very
little contradiction in the evidence. The proof shows that
John Drury stated, before he bought from Brickey, that he
wanted to build a new house but desired to buy the land
from Brickey before doing so, and after procuring the con-
veyance from Brickey he built the new house just across
the road from where the old one was built, and either he
or tenants occupied it until he sold to Linnertz. The proof

shows the land occupied by Drury after acquiring the deed from Brickey was that shown in plat No. 1, designated as Drury land, and it was the same land that Linnertz took possession of under his deed from Drury and which defendant in error is now in possession of.

Defendant in error testified that his father and his tenants occupied the new house built by Drury after the conveyance from the latter until his father's death and that the defendant in error is now living in it; that when he bought the land he thought he was buying the land his father, brother and himself had been in possession of up to that time; that that was the land he thought he was paying for; that he still has all of that land, and what he is seeking to recover in the ejectment suit is in addition to it. He testified that neither he nor his father ever had possession of the land lying north-west of the ditch made by Brickey. The ditch appears to have been dug in 1880, and one of the men who helped to dig it testified that Franklin W. Brickey showed them where to dig it and located it with reference to the rock at the Louvier corner; that the elder Linnertz was there at the time and said nothing. The ditch was placed on or near what Brickey claimed to be the line between surveys 342 and 343 but which according to the new survey was between 341 and 342. Previous to the construction of the ditch Drury had possession of a strip eighteen or twenty yards wide north-west of the ditch. Carr, who was a tenant of Drury, testified Drury showed him the lines and told him he thought his north-west fence was over the line on Brickey's land, but said for his tenant to go ahead and cultivate the land to the fence if Brickey didn't object.

From this and other proof it is clear that neither defendant in error nor his father ever had possession of any part of the land in controversy and that Drury never had possession of any part of it except a strip eighteen or twenty yards wide, and he did not claim to own that strip

but said it belonged to Brickey. The case, then, as made by the proof, appears to be that Brickey in 1855 owned surveys 341 and 342 and at that time owned no other land in that neighborhood. Both he and Drury supposing that the north-eastern ends of the said surveys were located as shown by plat No. 1, Drury sought to buy, and Brickey agreed to sell to him, the north-eastern ends of said surveys, containing one hundred acres. The deed describes the land, in part, as extending "as far south to the land heretofore deeded to Eugene Louvier by Franklin W. Brickey" and being a part of surveys 341 and 342. Drury took possession of the land he supposed Brickey conveyed to him as shown by plat No. 1 and built a new house near the south-east line. The facts were, Brickey did not own the tract on which the house was built, (supposedly survey 341,) but the tract on which the house was built was the north-eastern end of survey 662. In addition to it, Drury took possession of the tract adjoining it on the north-west, supposed at that time to be survey 342 but which was, in fact, survey 341. His possession of this latter tract extended up to a few yards beyond its north-west line, and as we understand the evidence this narrow strip beyond the north-west line is all of the land in controversy that Drury ever had possession of and that he never claimed but conceded was Brickey's. Neither defendant in error nor his father ever had possession of any part of the land in controversy.

Plaintiff in error insists that defendant in error now has by the Statute of Limitations an indefeasible title to the north-east end of survey 662, and to allow him a recovery of the land claimed in survey 342 would be giving him that much more land than he ever bought. It is true, as claimed by plaintiff in error, that the minds of Brickey and Drury never did meet on survey 342 as it is shown to exist by the new survey. They had in mind when the negotiations for the purchase and conveyance were made, surveys 341 and

342 as shown by the old survey in plat No. 1. Both parties believing Brickey owned the land shown in plat No. 1, he did not suppose he was conveying, nor did Drury suppose he was buying, survey 342 as shown in plat No. 2.

The question presented is one of some novelty, and we do not find any authority cited in the briefs which sheds much light on it. Under the circumstances shown by the proof, specific performance of the contract to convey survey 342 could not have been enforced, for Brickey did not intend to convey it and Drury had not bargained for it. The deed could not have been reformed so as to describe survey 662, for Brickey did not own it. The only remedy afforded that might have been availed of was rescission, but that remedy, to have been effectual, should have been resorted to in apt time between the parties to the conveyance. The relief sought by the bill in this case is not analogous to rescission, but is more in the nature of the specific performance of the contract of Brickey's grantees to take a tract of land which Brickey did not own in lieu of a tract which he did own and convey. It is not inaptly characterized by counsel for defendant in error to be a suit to enforce a mistake. We are unable to see wherein Brickey has any superior equities to Linnertz. If Linnertz succeeds in his ejectment suit he will still hold such title to survey 662 as he may be entitled to by the Statute of Limitations, also the land in survey 341 by virtue of the conveyance, and in addition thereto survey 342, which he did not know was the land described in his deed and which he has never been in possession of.

Plaintiff in error insists that although the title to a portion of the land Linnertz is in possession of was never conveyed to him by Brickey, as it has become good by lapse of time and he now has as much land, in area, as he contracted for, it would be inequitable to permit him to recover that portion of the land conveyed by Brickey but of which his grantees never had possession, and which Brickey now has in possession and claims still to own notwithstand-

ing he conveyed it in his deed to Drury. In other words, as Linnertz now has as much land as he contracted for, although he did not acquire it through Brickey, he cannot claim the other land which Brickey did convey, because he would then have more land than he supposed he was buying. If Brickey succeeds, it would be to compel Linnertz to take a tract of land under the conveyance made by Brickey which he did not own but to which Linnertz is said to have acquired a good title by the Statute of Limitations, in lieu of a tract conveyed by the deed from Brickey which he did own, and allow Brickey to retain said tract and the consideration paid therefor. The amount of land conveyed by Brickey to Drury and from him to Linnertz was one hundred acres, and presumably Brickey was paid on that basis. As Brickey did not own at least one-half of the land he put Drury in possession of, to now say he may retain practically one-half of the land he conveyed because his grantees acquired title by limitation to enough land he did not own to make up the amount purchased from him, would be to give him the benefit of the consideration paid for land he had no title to and allow him to retain a part of the land conveyed and for which the consideration was paid. The question resolves itself into whether the benefits of whatever title has been acquired by limitation to survey 662 shall be given to Brickey or Linnertz, and we cannot see that Brickey has any such superior equities that it becomes the duty of a court, under the rules and principles of equity, to interfere. Where the equities are equal the law must prevail. (2 Pomeroy's Eq. Jur. sec. 683; 11 Am. & Eng. Ency. of Law, p. 188; 16 Cyc. 138.) A case can be imagined where it might be inequitable to permit a recovery under the circumstances of the recovery sought by Linnertz in this case, but there is no proof in the record of any such circumstances. If Brickey has a valid title to survey 343, no reason appears in this record why he has not as much right to claim the north-east end of it as Linnertz has to

claim the north-east end of survey 342, if his title to it is valid. In that event it certainly could not be contended that equity should protect Brickey's possession of survey 342, and the bare fact that such is a possibility tends to show that he is not entitled to the relief asked in this case.

In our opinion the circuit court did not err in dismissing the bill, and its decree is affirmed.

*Decree affirmed.*