JOHN LINNERTZ, Defendant in Error, vs. JOHN DORWAY et al. Plaintiffs in Error.

*Opinion filed October 28, 1910.*

1. EQUITY—*equity cannot adjudicate legal rights unless equitable conditions exist.* Where equitable conditions authorizing it exist, a court of chancery will enforce legal as well as equitable rights in order to do complete justice between the parties, but in the absence of such equitable conditions a court of chancery is without jurisdiction.

2. RES JUDICATA—*when merits of ejectment case are not settled by dismissal of bill for injunction.* Where a bill to enjoin an ejectment suit is dismissed because the facts were not such as to authorize a court of equity to grant relief there is no adjudication of the legal title and the parties are still at liberty to try such title in a court of law.

WRIT OF ERROR to the Circuit Court of Monroe county; the Hon. BENJAMIN R. BURROUGHS, Judge, presiding.

H. CLAY HORNER, for plaintiffs in error.

RICKERT & ZIEBOLD, for defendant in error.

Mr. JUSTICE DUNN delivered the opinion of the court:

This was an action of ejectment begun to the March term, 1895, of the circuit court of Monroe county and has had four trials. The first resulted in a finding and judgment for the defendants. The plaintiff took a new trial under the statute, and a judgment having been again rendered for the defendants, a writ of error was prosecuted from this court and the judgment reversed. (*Linnertz v. Dorway,* 175 Ill. 508.) A third trial resulted in a judgment against the defendants, who took a new trial under the statute and thereupon filed a bill in chancery to enjoin the ejectment suit. The bill was dismissed upon a hearing and the decree was affirmed by this court. (*Brickey v. Linnertz,* 241 Ill. 187.) A fourth trial of the ejectment suit

was then had and a judgment was rendered against the defendants. This writ of error is prosecuted to procure a reversal of that judgment.

The land sought to be recovered was 43.61 acres, being the north-east end of survey No. 342 of the common field of Fort Chartres. A full description of the premises, a statement of the facts out of which the controversy arises, and plats showing the location of the land and the adjoining premises and the claims arising under the different surveys, appear in the statement of the case in 241 Ill. and will not be repeated here. The foundation of the judgment in favor of the plaintiff instead of the defendants on the last two trials was the claim that the lines of the surveys running north-east from the base were not continuous, but were broken at a point 583½ rods from the base line and slipped over to the north-west a distance of 5.83 chains, being precisely the width of survey 662, which is the next survey south-east of survey 341 and is between survey 341 and survey 340. Survey 342 is next north-west of survey 341, and since it is only 4.41 chains in width, the effect of this break is to separate the north-east end of the survey entirely from the south-west end, the corners of the two parts failing to connect by 1.42 chains. The lines of these surveys had always been supposed to run straight, without any break, until 1879. The defendant in error is in possession of precisely the same land which Drury thought he was buying and which Brickey thought he was selling, and which the father of the defendant in error believed he was buying of Drury and Drury believed he was selling. The evidence now in the record makes it apparent that the claim of the broken lines in the survey is erroneous, and that the belief of all the parties interested at the time the various conveyances were made was in accordance with the original survey. This original survey was made in 1810 by William Rector, a United States deputy surveyor, and was included in the report of the Kaskaskia

land commissioners, which was approved by an act of Congress February 20, 1812. This survey and plat show all the lines to be continuous and the tracts all rectangles. In 1827 William C. Greenup, who was also a United States deputy surveyor, re-surveyed these lands. He ran the base line and found most of the corners and monuments, finding stones at all the base-line corners of surveys 342, 341, 662, 340, and others. He surveyed survey 662 but at the northeast end he found no corner. The reason is apparent on a comparison of his field notes with Rector's, in connection with the oral testimony as to his starting point. Greenup says in regard to his re-survey of survey 662, that he began "at a planted stone on the base line in the prairie, corner to surveys 662 and 340, from which the north-east gate of the old fort, called Fort Chartres, bears south 24 degrees 30 minutes west, 10.28 chains distant." In fact, that call placed him at the corner of survey 662 and 341, just the width of survey 662, (5.83 chains,) north-west of where he supposed himself to be. When he supposed himself to be running the south-east line of survey 662 he was running the north-west line, which was the south-east line of survey 341. His notes of survey 662 really apply to survey 341. It is manifest, therefore, that the defendant in error ought not to have recovered when he was already in possession of the premises sued for. It was assumed, without verification, in all trials previous to the last, that Greenup's notes were correct in stating that he started from the base line at the corner of surveys 662 and 340, but uncontradicted evidence was introduced at the last trial that the point from which he started, which is identified by course and distance from the north-east gate of the fort,—a fixed monument,—was the corner of surveys 662 and 341. This corner answers the call of the field notes. It further appears that the north-east corner of survey 662 as originally marked, according to Rector's notes, was witnessed by a certain witness tree at the foot of the rocks and west of

the corner, and that these rocks and this witness tree are east of the line run by Greenup.

It is contended by the defendant in error that the question of the survey is not now open but was adjudicated by the decree in the chancery case, which was affirmed by this court. If that question was adjudicated in the chancery suit it is binding on the parties here. It was not directly adjudicated by the court. No issue as to the survey was presented by the pleadings. We expressly stated that the question which of the two surveys was correct was not involved, because the complainant conceded that the new survey was in that case to be treated as correct. The bill was founded not on either survey but upon the proposition that, regardless of the actual boundaries of the surveys, the defendant in error was in possession of the land which his predecessor in title had actually bought, and that he was thereby estopped in some manner from claiming according to the conveyance. The bill averred the lines of the surveys to be continuous and not broken and set out the former trial in the ejectment suit and its result. It averred that the complainant was unable to produce any further evidence and had no reason to expect a different result on a new trial. It set up the facts claimed to constitute an equitable defense, of which the complainant could not avail himself in a court of law. The position taken in the bill was that the complainant was unable to prove the correctness of the original survey and therefore could not establish his defense at law, but that he had an equitable defense which he could prove and of which he sought to avail himself. The court of chancery dealt only with the equitable defense. The basis of equitable jurisdiction failed because, in fact, the complainant had no equitable defense, and the court of chancery was not called upon and had no power to pass on the legal title. Where equitable conditions authorizing it exist, a court of chancery will enforce legal as well as equitable rights in order to do complete justice be-

tween the parties, but in the absence of such equitable conditions a court of chancery is without jurisdiction. (*Brauer v. Laughlin,* 235 Ill. 265.) In such case the adjudication of the legal title is incidental to the equitable relief. Here the bill was dismissed because the facts were not such as authorized a court of equity to grant relief. Having no authority to grant equitable relief the court was without the incidental power to adjudicate the legal title. The two lines of defense were entirely distinct. If the complainant had waited until final judgment had been rendered against him in the ejectment suit his right to maintain the bill in chancery would not have been affected. This was not the case of a bill to quiet title by one in possession against whom no suit has been brought, who may, under such circumstances, have his legal title quieted, but was a suit to restrain on equitable grounds a pending suit at law to enforce a legal title. In the latter case equity will not take from a court of law the settlement of titles which are legal, only. The dismissal of the bill was conclusive that plaintiff in error had no grounds for asking a court of equity to interfere in the ejectment suit, but it did not debar him from making such defense to it as he could at law. He might still insist that the defendant in error must prove his case, and he might disprove it by such evidence as he could. It is certain that the correctness of either survey was not decided by this court or the circuit court in the chancery suit. The correctness of the last survey (Greenup's) was assumed, as was necessary in passing on the equitable rights claimed. The legal title was not, however, affected, but after the dismissal of the bill the parties were still at liberty to try that title in a court of law.

The judgment of the circuit court was contrary to the views expressed in this opinion and to the evidence, and it is therefore reversed and the cause remanded.

*Reversed and remanded.*